TARA K. MCGRATH
United States Attorney
MICHAEL G. WHEAT
Assistant U.S. Attorney
CA Bar No. 118598
880 Front Street, Room 6293
San Diego, California 92101-8893
(619) 546-8437
michael.wheat@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 24CR1508-CAB |
| Plaintiff, | UNITED STATES' STATUS REPORT |
| v. | Date: September 27, 2024 |
| TORENCE IVY HATCH, | Time: 10:30 a.m. |
| *aka* "Boosie," | |
| *aka* "Lil Boosie," | |
| *aka* "Boosie Badazz," | |
| Defendant. | |

### I

### INTRODUCTION

On August 30, 2024, the Court heard argument on Defendant's Motion to Dismiss Indictment re: double jeopardy and collateral estoppel [ECF 17-1]; and his Motion to Dismiss Indictment re: vindictive prosecution [ECF 17-2]. Defendant's double jeopardy and collateral estoppel motion

1  was denied. *See* Exhibit 1, pp 7-8, Transcript of 8/30/24
2  hearing.

3      Defendant than attempted to supplement his vindictive
4  prosecution argument claiming that he was now exposed to
5  increase penalties under Title 18, U.S.C., §924(e), the armed
6  career criminal statute, and the career offender guidelines,
7  USSG §4B1.1[1], setting his BOL at 29. *See* USSG §4B1.1(b).  In
8  an effort to more fully understand this new argument, the
9  Court granted the Defendant's request to file supplemental
10 briefing and set a briefing schedule.  The schedule instructed
11 that a defense supplemental reply brief shall be filed by
12 Friday September 13, 2024, and any supplemental reply by the
13 United States due by Friday September 20, 2024.  A Status
14 Hearing is set for Friday September 27, 2024, at 10:30AM.

15                              II

16                            STATUS

17     As of the filing this report, Defendant has not filed any
18 supplemental briefing with the Court, nor filed a Notice of
19 Appeal on the denial of his double jeopardy motion.

20     Prosecutorial vindictiveness may only be shown where the
21 government tacks on new counts after a successful defense
22 appeal, and there is a showing of actual animus or sufficient
23 facts to give rise to a presumption of vindictiveness. See

---

[1] §4B1.1.  Career Offender
    (a)  A defendant is a career offender if (1) the defendant was at
         least eighteen years old at the time the defendant committed
         the instant offense of conviction; **(2) the instant offense
         of conviction is a felony that is either a crime of violence
         or a controlled substance offense;** and (3) the defendant has
         at least two prior felony convictions of either a crime of
         violence or a controlled substance offense. (Emphases added)

*USA'S STATUS REPORT RE DEFENDANT'S*                    *24CR1508-CAB*
*MOTIONS TO DISMISS FOR VINDICTIVNESS*

*United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982) (Kennedy, J.). The defendant has a heavy evidentiary burden.  HATCH has not met that burden.

There is no prosecutorial vindictiveness where the prosecutor revises the charge because of newly discovered evidence, an alternative theory of liability, or some other objective reason other than to punish the defendant for exercising legal rights.

"Vindictive prosecution" is a due process doctrine that prohibits prosecutors from filing increased charges in order to retaliate against a defendant for exercising a legal right. The defendant must establish that the increased charge was brought solely to penalize the defendant and could not be justified as a proper exercise of prosecutorial discretion. Defendant can meet this burden in either of two ways:

1.  Objective evidence showing actual vindictiveness
2.  Evidence indicating a realistic likelihood of vindictiveness that gives rise to a rebuttable presumption.

*Gallegos-Curiel*, 681 F.2d at 1171 ("The severe presumption should not be invoked lightly."). The standard is harder to meet when attacking pre-trial bumps in the charge. A presumption of vindictiveness automatically arises when charges are increased post-trial, but in the pre-trial context, a defendant must provide additional facts that show that all of the circumstances, taken together, support a realistic likelihood of vindictiveness. Timing of the new charges is not determinative. *United States v.* Kent, 649 F.3d

906, 913 (9th Cir. 2011)(In the context of pretrial plea negotiations, vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right.). "[W]hether the facts give rise to the appearance of vindictiveness is dependent upon the totality of the circumstances surrounding the prosecutorial decision at issue." *United States v. Griffin*, 617 F.2d 1342, 1347 (9th Cir. 1980). "A sequence of events is not enough; the likelihood of retaliation is crucial." *Gallegos-Curiel*, 681 F.2d at 1171.

HATCH has failed to make any showing of a realistic likelihood of vindictiveness that would trigger a rebuttable presumption.

Since the Supreme Court's decision in *Bruen,* and it's progeny, motions to dismiss in Section 922 cases are *de rigueur* at best, showing up and denied in scores of cases. *See United States v. Rosse*, 2017 WL 5625719 (6th Cir. Nov. 22, 2017)(Defendant failed to raise a presumption of vindictiveness for a pre-trial superseding indictment, where the defendant's motions were "merely garden-variety pretrial motions."). Before trial, defendants routinely "burden" the prosecution with demands and motions, and so it "is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." United States v. Goodwin, 457 U.S. 368, 372 (1982)("[D]efense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; . .

1  . to be tried by jury.  It is unrealistic to assume that a
2  prosecutor's probable response to such motions is to seek to
3  penalize and to deter.  The invocation of procedural rights
4  is an integral part of the adversary process in which our
5  criminal justice system operates."); *Gallegos-Curiel*, 681
6  F.2d at 1169 ("The exercise of routine or clearly necessary
7  defense motions in the pretrial stage does not meet the
8  threshold for more detailed inquiry and does not suffice to
9  raise the presumption of vindictiveness.").

10       Finally, HATCH has not been charged under the Armed
11  Career Criminal Act, Title 18, U.S.C., §924(e), and is
12  unlikely to be as it does not appear that he has the requisite
13  qualifying felonies.  In addition, a basic reading of the
14  Career Offender guidelines, USSG §4B1.1(a), does not appear
15  to apply to HATCH as he is not charged in the instant offenses
16  with "a felony that is either a crime of violence or a controlled
17  substance offense." See USSG §4B1.2(a). "Crime of violence" does
18  not include the offense of unlawful possession of a firearm
19  by a felon or a drug user, unless the possession was of a
20  firearm described in 26 U.S.C. § 5845(a), which HATCH's guns
21  were not.
22  //
23  //
24  //
25
26
27
28

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III

<u>CONCLUSION</u>

The Court should deny HATCH's motions to dismiss for vindictive prosecution.

Dated: September 20, 2024.     Respectfully submitted,

                              TARA K. MCGRATH
                              United States Attorney

                              *Michael G. Wheat*

                              MICHAEL G. WHEAT
                              Assistant U.S. Attorney

*USA'S STATUS REPORT RE DEFENDANT'S
MOTIONS TO DISMISS FOR VINDICTIVNESS*                    *24CR1508-CAB*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

[Transcript from August 20, 2024, Motion Hearing USA v. HATCH 24CR1508-CAB]

*USA'S STATUS REPORT RE DEFENDANT'S*
*MOTIONS TO DISMISS FOR VINDICTIVNESS*                                    *24CR1508-CAB*

1                    UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4   UNITED STATES OF AMERICA,        .
                                     .
5              Plaintiff,            . No. 24-cr-1508-CAB
                                     .
6                   v.               . August 30, 2024
                                     . 10:40 a.m.
7   TORENCE IVY HATCH,               .
                                     .
8              Defendant.            . San Diego, California
    . . . . . . . . . . . . . . .    .

9

10            TRANSCRIPT OF MOTION HEARING/TRIAL SETTING
            BEFORE THE HONORABLE CATHY ANN BENCIVENGO
11                 UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14  For the Plaintiff:     United States Attorney's Office
                           By: ASHLEY KAINO-ALLEN, ESQ.
15                             MICHAEL G. WHEAT, ESQ.
                           880 Front Street, Room 6293
16                         San Diego, California 92101

17  For the Defendant:     Law Offices of Meghan Blanco
                           By: MEGHAN BLANCO, ESQ.
18                         28202 Cabot Rd., Suite 300
                           Laguna Niguel, California 92677

19

20

21
    Court Reporter:        Chari Bowery, RPR, CRR
22                         USDC Clerk's Office
                           333 West Broadway, Suite 420
23                         San Diego, California 92101
                           chari_bowery@casd.uscourts.gov
24
    Reported by Stenotype, Transcribed by Computer
25

1          SAN DIEGO, CALIFORNIA; AUGUST 30, 2024; 10:40 A.M.

2                          -o0o-

3          THE CLERK:  Calling matter 9, 24-cr-1508-CAB, United

4   States of America v. Torence Ivy Hatch, on calendar for motion

5   hearing/trial setting.

6          ATTORNEY BLANCO:  Good morning, Your Honor.  Meghan

7   Blanco, on behalf of Mr. Hatch, who is appearing telephonically

8   with Your Honor's permission.

9          ATTORNEY KAINO-ALLEN:  Good morning, Your Honor.

10  Ashley Kaino-Allen and Mr. Michael Wheat on behalf of the

11  United States for this matter.

12         THE COURT:  All right.  Thank you.

13      Good morning, Mr. Hatch.

14         THE DEFENDANT:  Good morning.

15         THE COURT:  All right.  I have two motions on file in

16  this case from the government to dismiss the indictment.

17      I was sort of side-informed that you did not want to

18  proceed on those today, or do you?

19         ATTORNEY BLANCO:  I am prepared.

20      I was caught up in a hearing all day yesterday, so I

21  haven't looked at the *ex parte* that Mr. Alimouri filed; but I

22  think -- my understanding, it was just to allow Mr. Hatch to

23  appear telephonically.

24         THE COURT:  All right.  Well, the first motion was to

25  dismiss in light of the double-jeopardy clause.

1    The Court has reviewed the defendant's motion as well as

2    the government's opposition.  I am inclined to deny that

3    motion.  I do not believe the requirements of double jeopardy

4    have been met here.

5    This is a rather unusual set of circumstances.  Mr. Hatch

6    also was charged with the violation of 18 U.S.C. Code Section

7    922(g).  While his case was pending, the Ninth Circuit issued a

8    ruling that would have invalidated that as a law as

9    unconstitutional in light of the Second Amendment and *Bruen*.

10   The Court therefore reversed precedent in this court, and

11   the Court found there was no charge that could be sustained.

12   There were no factual findings specifically made to the

13   defendant regarding the elements of the offense or whether --

14   certainly there was no acquittal; it was simply a matter of

15   there's no law here that he violated at that moment in time.

16   That case has now been vacated.  The precedential law, as

17   far as this Court understands and is concerned, now is back in

18   place, making 922 again a constitutional law, and the

19   government has reissued their indictment on that case.

20   I do not believe that there is an applicable

21   double-jeopardy standard here.

22   It is your motion.  Anything you want to say for the

23   record?

24        ATTORNEY BLANCO:  Thank you.

25   Would Your Honor just like me to address the first issue

1 we raised, and that was the double jeopardy?  I know there
2 were --
3           THE COURT:  You briefed it.  I don't think -- I am
4 not really going to change my mind, but I was giving you the
5 opportunity if you wanted to highlight anything for your
6 record.
7           ATTORNEY BLANCO:  Perfect.  Thank you, Your Honor.
8      I think I agree with Your Honor.  This was a very unusual
9 situation.  This is an unusual situation because --
10           THE CLERK:  Hang on one second.
11      Mr. Hatch, can you mute your phone, please, so that you
12 can listen?  Thank you.
13           THE DEFENDANT:  Turn it off?
14           THE CLERK:  Just mute it.  Thanks.
15           ATTORNEY BLANCO:  I agree with Your Honor that this
16 is a very unusual situation and one that probably does not
17 arise often.
18      The reality, though, even if there was no factual
19 application, was a stipulation, really, or at least not an
20 opposition by the government of the facts in this case.  The
21 government's initial opposition to Mr. Hatch's motion to
22 dismiss that was filed in 2023, the facts that they put out
23 were facts that we agreed to; and that is that Mr. Hatch's
24 prior convictions qualified as certain types of felonies.
25 Those are drug convictions.  We all agree to that.  That was

1    not something that was in dispute before Your Honor.  And we
2    conceded, for the point of the motion, possession.

3        So those facts were not in dispute.  Those were the two
4    facts that the government would have had to prove at trial to
5    convict Mr. Hatch of being a felon in possession.

6        With those facts not in dispute, the question then became
7    did Mr. Hatch commit a crime under the law as it existed during
8    that brief period of time, and Your Honor ruled on it, and the
9    answer was "no."

10       And so, in an unusual way, this is not a case where we
11   needed to come to an evidentiary hearing on that.  There was no
12   evidentiary issue to be decided.  It was based on facts that we
13   were not disputing; that the government indicated it would need
14   to prove to convict Mr. Hatch, did that violate a law?  And the
15   answer was "no."

16       So, for double-jeopardy purposes, I do think, in this rare
17   case, it applied.

18           THE COURT:  Let me pause.

19       Mr. Wheat, do you want to respond?

20           ATTORNEY WHEAT:  Your Honor, in light of the Court's
21   tentative, not much.

22       But the fact that there was no admission by Mr. Hatch
23   himself, counsel's representations are insufficient to attach
24   jeopardy, and I think the Court's tentative is correct.

25           THE COURT:  And the Court would just cite to

 1 | *United States v. Lusby*, 972 F.3d. 1032, Ninth Circuit, 2020.

 2 | "Jeopardy did not attach where the motion to dismiss considered

 3 | pure questions of law and the Court ruled without receiving or

 4 | evaluating evidence relating to guilt."

 5 | So whether or not you were willing to stipulate or not --

 6 | and I think if this case had gone to trial, that stipulation

 7 | you would not have been putting forward -- this was purely a

 8 | question of law.  Was there a law in place at the time that he

 9 | could have violated?  And at that moment, that window, there

10 | wasn't, so the Court dismissed.

11 | Now there is again, and there's no statute of limitations

12 | issue here, so there's no problem.

13 | I think we have covered the double-jeopardy issue.  You

14 | have also got your vindictive prosecution claim.

15 | ATTORNEY BLANCO:  That's, I think, a subissue,

16 | separate from the double jeopardy, though, is the collateral

17 | attack; whether the government is collaterally estopped from

18 | filing a new charging document against Mr. Hatch.

19 | The argument there is slightly different than the one that

20 | was put forth in the double jeopardy, but I do understand that

21 | there was overlap.

22 | In this case, assuming double jeopardy did not apply, the

23 | government's remedy, then, would be to file an appeal, which

24 | they could have done.  They admitted in their opposition that

25 | they were working on an appeal.  That is what you do if you

1    disagree with a Court's ruling, a Court's legal ruling on a

2    case.

3        They had 30 days to appeal Your Honor's ruling, and that

4    would have taken the case out of Your Honor's court up to the

5    Ninth Circuit, where the legal issue, then -- if it is not an

6    application of facts to the law, the legal issue would have

7    been appropriately addressed by an appellate court that reviews

8    legal issues.  That did not happen here.

9        They are not allowed to circumvent their procedural

10   requirements and obligations by simply filing new cases, and

11   that is what they did.  They filed a new case.

12       I believe that they are collaterally estopped from doing

13   so because they did not follow the proper procedure.

14       We see it in other cases.

15           THE COURT:  Again, though, in those cases where you

16   are applying this equitable doctrine of estoppel here, the

17   ultimate issue had to have been litigated and determined here,

18   and it wasn't.  There were no factual issues here.  The Court

19   did not reach the elements of the offense.

20       So, yes, in that instance, if we had, properly, they would

21   have had to have appealed -- although the government can't

22   appeal an acquittal -- but they could have appealed those

23   rulings.

24       In this case, again, this is such a unique set of

25   circumstances, and I do not find that inequitable doctrine

1   should apply here, that they are somehow circumventing an

2   appellate decision because, in essence, they would have been

3   appealing the *Duarte* application if *Duarte* was still the law;

4   but *Duarte* has been vacated, so there is nothing to appeal.

5       We are back to where we were in the first instance and

6   your first motion to dismiss, which the Court denied.  And they

7   won on that one.

8       So, again, these are all preserved for any long-term

9   appeal issues, but the Court is not going to dismiss this

10  now-subsequent indictment.

11      And frankly, on the vindictive prosecution, that's a

12  really high burden, and I don't think you have met it.

13          ATTORNEY BLANCO:  If I could be heard briefly on that

14  one, Your Honor, the government's position was vindictive

15  prosecution does not apply here.  And many of the cases that

16  they cite go to the proposition that if a person's exposure is

17  not increased, then, basically, no harm, no foul.

18      I don't think that that is the right analysis for

19  Mr. Hatch for two reasons.  First, if the first charge, the

20  922(g)(1) charge, is invalid, that means that the second charge

21  is the only charge that has a guideline range with a statutory

22  max.  So his exposure, then, is increased.

23      Secondarily, though, when we are looking at 922(g)

24  offenses, where each offense contains or has a 15-year stat

25  max, when you add two of them together, the stat max increases

to 30 years in total.

Well, the government is right that 922(g)(1) and 922(g)(3) group together for sentencing purposes.

The government failed to address an issue that may become at play in Mr. Hatch's case and that I believe the government, if we got to sentencing, would try to argue. And that is that the government has indicated that Mr. Hatch's prior non-violent drug offenses, out of Louisiana, although he pleaded to several of them on the same day, each constitute a separate drug offense. So his two prior pleas, I believe, in their view, because they are separate offense states, constitute more than two offenses.

More than two prior drug offenses put Mr. Hatch, under 922, in the potential for a career offender guidelines range.

His career offender guidelines range would be a 29, criminal history category VI, which puts the guidelines range then above 15 years.

So, when you are combining two offenses that allow the Court to sentence Mr. Hatch to a guidelines range that is beyond what one count would be, the impact is not nothing. It does expose Mr. Hatch to additional penalties. It does expose Mr. Hatch to additional penalties that the Court could not and the government could not get to with only one 922 count.

That was not addressed by the government, and that is what is at play here.

1          So that analysis is inapplicable to Mr. Hatch's case, the

2     analysis that the government made in terms of grouping.  That

3     may be, if we were talking about a regular 922, where the

4     government has not cited and indicated a belief that he may

5     qualify as a career offender.

6          THE COURT:  Mr. Wheat?

7          ATTORNEY WHEAT:  Your Honor, the response we filed

8     indicates that we are not going to seek to stack these.  They

9     are a separate legal theory.  Same guideline offense applies.

10    Same guideline section applies to both offenses in this case.

11    He is not exposed to any more time, and the guideline

12    calculation remains the same for both offenses.

13         ATTORNEY BLANCO:  Just to explain, the issue is not

14    stacking; it is that the stat max is now 30 years, and so the

15    guidelines range for a career offender, with an offense of 15

16    years to 20 years, moves him to a base offense level of 29, or

17    offense level of 29; criminal history category VI.  That gets

18    you at the high end of that guidelines range, above 15 years,

19    which you could not get with only one count.

20         THE COURT:  I'm sorry.  Maybe I am a little confused

21    here.

22         We are talking about sentencing now, and I am talking

23    about whether or not they can bring an indictment with these

24    charges.  And your argument is because there's now two 922 --

25    well, there's the 922(g)(1) and the 922(g)(3) and 924, the

1    adding of the unlawful user/addict in possession of a firearm,

2    now increases his guideline range because --

3            ATTORNEY BLANCO:  So, here is -- I know this is more

4    complicated.  I would be happy to further brief it if Your

5    Honor allows me to file a reply.

6        But the guidelines range for a 922(g)(1) offense, if you

7    don't have multiple crimes of violence, which Mr. Hatch does

8    not, or you don't have multiple drug offenses, is pretty

9    straightforward.

10       In Mr. Hatch's case, the base offense level likely would

11   be 20.  And if that is all that was at play, then the

12   government's argument would be right; Mr. Hatch, by the filing

13   of a second 922 count, is not facing any additional potential

14   penalty.

15       The problem, though, is that 922(e) allows for the

16   application of the career offender guidelines for individuals

17   who have three or more underlying drug offenses, serious drug

18   offenses.

19       Unfortunately, what we would consider, I think, in

20   California minor drug offenses, in Louisiana, are punishable by

21   up to 15 years.  The stat max Mr. Hatch faced for what we

22   consider minor drug offenses is well beyond the ten years, all

23   that's required to get him into the potential for career

24   offender guidelines.

25       If that is applied in this case, and I would argue it

1    should not be --

2            THE COURT:  How does that relate to the current

3    charges?

4        I mean, whether or not the Court considers him a career

5    offender, should he be convicted and we are at a time of

6    sentencing is going to be based on his criminal history and not

7    the charges pending in this case.  The conviction is not going

8    to add a history, so I am not following.  Maybe I am not

9    following this.  I did not get this through your papers in

10   terms of why adding the unlawful user/addict in possession

11   charge, which is the only new charge here, somehow it makes

12   this more severe.

13           ATTORNEY BLANCO:  I can brief it.

14       But it makes it more -- it allows the government to seek

15   and the Court to impose a sentence, a guideline sentence -- so

16   we are not talking about just additional enhancements, where we

17   would be arguing for variances or something; an actual

18   guideline sentence that is above what Mr. Hatch could have been

19   sentenced to, with a stat max of only one 922(g) count.

20       So, when we are talking about vindictive prosecution, one

21   of the elements is -- one of the issues is whether a person

22   would be exposed to greater penalty, whether his exposure

23   increases.

24       And the government's argument about grouping would apply

25   if Mr. Hatch didn't face the threat of the application of the

13

1   career offender enhancement at sentencing, which puts him in a

2   guidelines range in excess of 15 years.

3       So, for Mr. Hatch, the government -- and I can put it in a

4   reply.

5           THE COURT:  You know what?  I am going to hold off on

6   your motion on vindictive, because this is very complicated,

7   and it really is talking about sentencing, as opposed to what

8   the Court is perceiving to hear whether the charge itself is --

9   it really all seems related; it is just a different aspect of

10  the same charge of felon in possession.

11      So if you want to file a supplemental brief, you will have

12  the opportunity to respond to that, and I will put this over.

13      Where are we in terms of where we are going with this

14  case?  Because that's a whole different issue.

15          ATTORNEY BLANCO:  Because of the double-jeopardy

16  argument that we made, I believe, once this other issue is

17  resolved before Your Honor, that gives us a way to writ

18  Mr. Hatch's legal argument, the 922 argument, up to the

19  Ninth Circuit.

20      There is a potential issue about the -- if the 922(g)(3)

21  is still at play, we may not be able to writ it up.  I need to

22  look at that issue more, just because there would potentially

23  be a second charge that would potentially not be covered by a

24  double-jeopardy argument.  But double jeopardy allows us to

25  make an appeal before trial, so we could have the Ninth Circuit

1   actually address the legal argument without Your Honor having

2   to do it.

3       That would be my intention, is to try to file a writ to

4   get the Ninth Circuit to address Mr. Hatch's case under

5   whatever it decides with respect to 922(g)(1) offenses, as that

6   is just a purely legal issue.

7           THE COURT:  Well, that's certainly on -- you can

8   pursue that path.

9       In terms of what is going to happen here, do you just

10  want -- I can give you two more weeks to file a supplement on

11  the vindictive prosecution; give the government a week to

12  respond to that; set this out for one more status at the end of

13  September; and then maybe you can collaborate on some plan

14  here?

15      Do we try this case?  Do we continue this case?

16      If you file a writ and I lose jurisdiction, that's a whole

17  different issue.  I have no control over that.  That's up to

18  you.

19      That's kind of where I am, because these cases are just

20  really difficult.

21      Mr. Wheat, do you have a suggestion?

22          ATTORNEY WHEAT:  Your Honor, just to address the one

23  point that counsel brought up, about the career offender, I

24  think -- she mentioned 924(e), if I heard her correctly.  That

25  is the armed career criminal statute.  Mr. Hatch is not charged

1  with 924(e), so I don't think that is applicable to this.

2        ATTORNEY BLANCO:  I apologize.  I think I meant to

3  say 922.

4        THE COURT:  Well, that's not here, either.

5     I have got him charged with 922(g)(1), 922(g)(3), and

6  924(a)(2).  So you need to sort it because you are throwing a

7  lot of numbers around; I don't have all the statutes in front

8  of me.  But if he qualifies as a career offender for purposes

9  of sentencing, it may be completely separate and apart from the

10  charges here.

11     As I am understanding your argument, you are saying, in

12  light of the charges here, he starts -- I don't even want to

13  revisit it.

14        ATTORNEY BLANCO:  I will put it on paper.  I know it

15  is a more complicated argument.

16        THE COURT:  All right.  Please file any supplemental

17  briefing on the vindictive prosecution analysis by

18  September 13th.

19     Government, you may file any replay to that by

20  September 20.

21     I will reset this for status on September 27th, at 10:30,

22  also.

23     And in advance, Mr. Hatch may appear telephonically for

24  that hearing.  But if we are proceeding with -- well, you tell

25  me where we are proceeding.  If the government wants a trial

16

```
 1   date, they should come in with a proposal and have discussed it

 2   with Ms. Blanco.

 3        If you are going to file a writ, that's completely on you,

 4   and then we will see where we are.

 5             ATTORNEY BLANCO:  Thank you, Your Honor.

 6             THE COURT:  All right.  Thank you.

 7             ATTORNEY WHEAT:  Thank you.

 8             THE CLERK:  Thank you, Mr. Hatch.

 9             THE DEFENDANT:  All right.

10        (End of proceedings at 11:00 a.m..)

11                         -o0o-

12                 C-E-R-T-I-F-I-C-A-T-I-O-N

13             I certify that the foregoing is a correct
     transcript from the record of proceedings in the above-entitled
14   matter.  Dated:  September 6, 2024.

15                         /s/  Chari Bowery
                            _____
16                          Chari Bowery, CSR No. 9944, RPR, CRR

17

18

19

20

21

22

23

24

25
```