ADAM GORDON
United States Attorney
ALICIA P. WILLIAMS
California Bar No. 262823
LYNDZIE M. CARTER
Kansas Bar No. 25773
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-8917
alicia.williams@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>v.<br><br>TORENCE IVY HATCH,<br>    aka "Boosie,"<br>    aka "Lil Boosie,"<br>    aka "Boosie Badazz,"<br>    aka "Torrence Ivy Hatch,"<br><br>              Defendant. | Case No. 24-CR-1508-CAB<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date:   January 9, 2026<br>Time:  9:30 a.m.<br><br>Honorable Cathy Ann Bencivengo |
|---|---|

The United States of America, by and through its counsel, Adam Gordon, United States Attorney and Alicia P. Williams and Lyndzie M. Carter, Assistant United States Attorneys, hereby files its Sentencing Memorandum in the above-captioned case.

## I.
## INTRODUCTION

The United States recommends the Court adopt the following Guidelines calculations and impose the following sentence:

1

| Guideline | Level |
|---|---|
| 1. Base Offense Level [§ 2K2.1(a)(4)(A)] | 20 |
| 2. Acceptance of Responsibility [§ 3E1.1(a) & (b)] | -3 |
| Total Offense Level | 17 |
| Criminal History Category | V |
| Guideline Range | 46-57 months |
| Recommended Custodial Sentence | 24 months |
| Supervised Release | 3 years |
| Fine | $0 |
| Special Assessment | $100 |

## II.

## PRESENTENCE REPORT

On October 15, 2025, United States Probation filed a Presentence Investigation Report ("PSR"). ECF No. 64. As of the date of this filing, Defendant has not filed any objections to the PSR.

Probation correctly notes that the guideline for 18 U.S.C. § 922 offenses is found in USSG § 2K2.1 and that the base offense level of 20. PSR ¶ 20. Consistent with the plea agreement, Probation recommends a two-point downward adjustment under USSG § 3E1.1(a) because Defendant has clearly accepted responsibility, as well as an additional point downward adjustment under USSG § 3E1.1(b) because Defendant "assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. PSR ¶¶ 23-24. These calculations add up to a total offense level of 17. PSR ¶ 25.

Ultimately, Probation recommends this Court impose a 46-month custodial sentence. PSR ¶ 133. Probation further recommends this Court impose a term of supervised release of 3 years. PSR ¶ 136. Probation also recommended a fine of $50,000 as well as a special assessment of $100. PSR ¶ 142.

III.

POINTS AND AUTHORITIES

A. Offense Conduct

The facts of this case are detailed well in the plea agreement and PSR, which are incorporated herein by reference. Here, the United States provides a summary of the case to supply the Court with the basis for the United States guidelines calculations and sentencing recommendation.

On May 6, 2023, San Diego Police identified Defendant while watching the Instagram Live of a known member of the "Neighborhood Crip" street gang. PSR ¶ 4. Defendant was seen in the Instagram Live with a gun tucked in his waistband as he appeared to be filming a music video. *Id.*



Officers determined where the video was being recorded using air support and were able to watch as Defendant enter a car. *Id.* Officers conducted a traffic stop and questioned the driver as well as Defendant and his security detail, who were both seated in the back of

3

the car. *Id.* When asked, Defendant denied having any weapons, but his security detail turned over a bag containing a 9mm Springfield "Hellcat," loaded with seven rounds of ammunition and not registered in California. *Id.* All occupants were removed from the car and the officers effectuated a search of the vehicle. *Id.*

During the search, officers found a second loaded gun, a 9mm Glock 19 pistol in the backseat of the car, which also was not registered in California. PSR ¶ 5. Following the search, officers placed Defendant under arrest. PSR ¶ 6.

At the precinct, Defendant denied carrying firearms. *Id*. He yelled and continually threatened the safety of his security detail. Specifically, he made the following statements: "I'm going to put 10K on your head; I'm going to put you in a body bag; I'm going to kick your ass; I'm going to kill you; and you're going to leave in a body bag." *Id.* Defendant told Officers the firearms were flown from Atlanta, but that they were always in the possession of his security detail for Defendant's protection. *Id.* Officers showed Defendant a photo posted to Instagram of himself with a gun tucked into his waistband. PSR ¶ 7. Defendant appeared to be wearing the same clothing in the Instagram video that he was wearing at the time of the stop. *Id*. Additionally, the firearm in the video appeared to be the same Glock-style handgun recovered during the traffic stop. *Id*. Defendant admitted he had the gun for 30 minutes while filming the music video but returned the gun to his security detail afterwards. *Id.*

Agents determined that the gun found in the back seat of the car (the Glock) was the same gun Defendant had in his waistband during the filming of the music video, that Defendant's DNA was found on both firearms, and that the firearms were purchased in Georgia by Defendant's girlfriend. PSR ¶ 12.

Ultimately, on June 21, 2023, a Grand Jury returned an indictment charging Defendant with felon in possession of a firearm and ammunition. 23-CR-1201-CAB, ECF

4

NO. 82. Although, that indictment was later dismissed[1], on July 19, 2024, a Grand Jury returned a second two-count indictment charging Defendant in Count 1 with felon in possession of a firearm and ammunition, and in Count 2 with drug user in possession of a firearm and ammunition. ECF No. 1. On August 26, 2025, pursuant to a plea agreement, Defendant entered a guilty plea to Count 1. ECF No. 59.

On September 22, 2025, Defendant was virtually interviewed in the presence of defense counsel. PSR ¶ 17. He stipulated to the factual basis of the plea agreement as well as his statement of the offense. *Id.*

B. Acceptance of Responsibility and Early Resolution Departures

Defendant has clearly demonstrated acceptance of responsibility and thus is deserving of a two-level downward departure under USSG § E1.1(a). An additional one level downward departure under USSG § E1.1(b) is deserved as Defendant timely notified authorities of the intention to enter a guilty plea.

C. Criminal History

With 12 criminal history points, Defendant is in criminal history category V. Defendant has garnered an extensive criminal history including prior convictions for resisting arrest, battery, assault, illegal carrying of a firearm, drug trafficking offenses, possession of narcotics, and bringing narcotics into a penitentiary. His last conviction was in 2019. Due to these convictions, Defendant has served lengthy sentences in prison, which seemingly have not acted as a deterrent. Alongside his convictions, Defendant has numerous prior arrests.

D. Victim Impact

There are no identifiable victims in this case.

//

//

---

[1] This Court granted Defendant's Motion to Dismiss on July 12, 2024. 23-CR-1201-CAB, ECF NO. 82.

E. <u>Personal History and Characteristics</u>

The PSR details Defendant's personal history and characteristics. The report shows that during his childhood, Defendant was witness to domestic violence between his parents as well as his father's substance abuse issues. The report also shows the death of Defendant's father due to a brain tumor deeply affected him, leading to depression and behavioral problems in his teenage years.

Defendant's own substance abuse issues began with marijuana use at age 8, which became daily use by age 15. According to the PSR, Defendant began consuming alcohol at age 13 and has also experimented with substances such as ecstasy and liquid codeine. Most of Defendant's drug and alcohol use is related to his lifestyle as a performer. However, Defendant has not smoked marijuana or consumed alcohol since his arrest in 2023.

Defendant earns income through royalties from his music. He also owns his own record label company, Badazz Entertainment and Music, LLC, (aka Bad Azz Music Syndicate), and continues to host and perform events throughout the country. He has continued to host and perform throughout the pendency of his case. Additionally, Defendant owns the clothing label, Jewel House Clothing, and LJ Hatch Film, LLC.

According to the PSR, Defendant is diagnosed with Type I diabetes, but he admitted he does not treat his health condition seriously. He is also the father of nine children, most of which he financially supports and takes an active role in raising. Defendant has resided in his home in Georgia with his girlfriend since he was placed on bond in 2023 and recently built additional homes on the property for his children. In contrast, however, the information detailed in the PSR regarding a social media post Defendant made about his son and nephew is disturbing. PSR ¶ 57.

//
//
//

IV.

UNITED STATES' SENTENCING RECOMMENDATION

Defendant has entered a guilty plea to felon in possession of a firearm and ammunition.

In mitigation, however, Defendant has accepted responsibility, timely notified authorities of an intention to enter a guilty plea and had a difficult upbringing which likely contributed to his current predicament. He has also been gainfully employed for many years and has continued to work throughout the pendency of this case. These factors weigh in favor of a variance under 18 U.S.C. § 3553(a).

However, Defendant's insistence on carrying a weapon despite his status as a convicted felon, coupled with his criminal history which includes threats to harm or kill, and the fact that he threatened another individual in connection with this matter, weigh against any further variance other than that recommended by the United States.

Considering the guidelines and balancing all factors under 18 U.S.C. § 3553(a), the United States recommends the Court impose a sentence of 24 months' custody. A sentence of 24 months' custody reflects the seriousness of the offense, will promote respect for the law, will deter Defendant and others, and serve to protect the public from future crimes of Defendant. The United States also recommends a period of three years of supervised release with a full fourth amendment waiver. Finally, the United States recommends the Court impose the mandatory special assessment fee of $100.

DATED: 1/2/2026

Respectfully submitted,
ADAM GORDON
United States Attorney

*/s/ Alicia P. Williams*
ALICIA P. WILLIAMS
LYNDZIE M. CARTER
Assistant United States Attorneys